**FILED**

AO 91 (Rev. 11/11) Criminal Complaint                    AUSA Jacqueline Stern (312) 353-1929

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MAY 2 7 2015
05-27-2015
**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

UNITED STATES OF AMERICA

v.

NICK WURL

CASE NUMBER:

# 15CR 306

**CRIMINAL COMPLAINT** MAGISTRATE JUDGE BROWN

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

From in or about August 2013 to on or about May 26, 2015, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1343 | in that NICK WURL, defendant herein, devised, intended to devise, and participated in a scheme to defraud investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and on or about May 7, 2015, at Chicago, Illinois, for the purpose of executing the scheme to defraud, defendant NICK WURL did knowingly cause to be transmitted in interstate commerce, from Chicago, Illinois to New Jersey, by means of wire communication, certain writings, signs, and signals, namely: an email, which included a monthly account statement containing false information, that was sent by the defendant from Chicago, Illinois to investor Br.Ham. in New Jersey. |

This criminal complaint is based upon these facts:

  X  Continued on the attached sheet.

*Mark Stakem*

MARK D. STAKEM
Special Agent, Federal Bureau of Investigation
(FBI)

Sworn to before me and signed in my presence.

Date: May 27, 2015

*Geraldine Soat Brown*
*Judge's signature*

City and state: Chicago, Illinois

GERALDINE SOAT BROWN, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

ss

## AFFIDAVIT

I, MARK D. STAKEM, being duly sworn, state as follows:

1.     I am a Special Agent with the Federal Bureau of Investigation, and have been so employed for 17 years.   My current responsibilities include the investigation of white collar crime, including mail, wire, and bank fraud.

2.     This affidavit is submitted in support of a criminal complaint alleging that NICK WURL has violated Title 18, United States Code, Section 1343.  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging WURL with wire fraud, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3.     This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and other persons with relevant knowledge, a review of records, including bank records and trading records, and information provided to me by WURL.

4.     As discussed in greater detail below, the evidence shows that from in or about mid-2013 through on or about May 26, 2015, at Chicago, Illinois, WURL devised, intended to devise, and participated in a scheme to defraud investors, and to obtain money and property from investors by means of materially false and

fraudulent pretenses, representations, and promises, and that on or about May 7, 2015, at Chicago, Illinois, for the purpose of executing the scheme to defraud, defendant NICK WURL did knowingly cause to be transmitted in interstate commerce, from Chicago, Illinois to New Jersey, by means of wire communication, certain writings, signs, and signals, namely: an email, with a monthly account statement containing false information, sent by the defendant from Chicago, Illinois to investor Br.Ham. in New Jersey, in violation of Title 18, United States Code, Section 1343.

5.     Secretary of State records show that WURL is the managing member of a company known as Ludiera Capital, LLC.

6.     As part of the investigation, I obtained and reviewed bank records and trading records for accounts held by Ludiera, and WURL individually.

7.     On May 26, 2015, I interviewed WURL.  He signed, initialed, and dated a written statement, and also provided additional information verbally.

8.     WURL stated that between approximately mid-2013 and May 26, 2015, he obtained approximately $8 million from investors by making false representations to them.  According to WURL, he knowingly falsely represented the nature of Ludiera's investment program to investors, in order to convince them to invest money with Ludiera.  According to WURL, he falsely represented to investors that Ludiera was engaged in a physical commodity trading fund, involving the physical movement of commodities, even though Ludiera was not engaged in the

physical movement of commodities, but rather was involved in speculation and trading of options and futures.

9.     Bank records show that between approximately July 2014 and April 2015, Ludiera received approximately $8 million from various sources, which appear to be deposits and transfers of funds primarily from individuals, and custodians of individual accounts. Most of the checks were made payable to Ludiera Capital. Two checks, totaling $400,000, were made payable to the Ludiera Diversified Opportunity Portfolio.

10.     When I interviewed WURL, he stated that he was the President of Ludiera, and controlled Ludiera's operations. He stated that he was the sole signatory on Ludiera's accounts, and had sole access to Ludiera's funds. He stated that he solicited investors, and traded the investors' money. He stated that there were approximately 35 to 40 investors.

11.     WURL stated that he has lost approximately $3 million trading investors' funds, since July or August 2014. He said that the trading that resulted in those losses was not the type of trading or transactions that had been described to investors.

12.     Trading records show that Ludiera lost approximately $3 million between July 2014 and April 2015.

13.     WURL stated that he repaid investors at least $1.8 million, and he believed that some of those repayments may have been made using other investors' funds.

14. Bank records show that Ludiera repaid investors approximately $1.8 million in January 2015.

15. WURL stated that he spent approximately $70,000 to $100,000 of investors' funds for his own personal benefit, which he was not authorized to do. WURL stated that he purchased two vehicles with investor money and paid off credit cards and a personal loan with investor funds. WURL stated that he was entitled to a fee of approximately 1% of investor funds raised, which he took, but that he also spent additional investor funds, to which he was not entitled.

16. Bank records show that funds held in Ludiera's bank account were used to make two payments in October 2014 to what appear to be two car dealerships, namely, approximately $68,000 was paid to Laura Buick GMC, and approximately $87,000 was paid to Anthony Buick GMC. Based on the bank records, it also appears that Ludiera's funds were used to make payments to credit card companies and a lending company.

17. On May 26, 2015, WURL stated that Ludiera currently has approximately $3.5 million of investor funds, which were obtained through false representations to investors, in Ludiera's accounts at OptionsXpress, Bank of America Merrill Lynch, Chase Bank, and Interactive Brokers. WURL stated that he was in control of those funds, and that he would not remove or transfer any of those funds.

18. Account records show the following: OptionsXpress had at least $2 million, on or about April 30, 2015, as well as having open positions on trades in the

account; Bank of America Merrill Lynch had approximately $400,000, on or about May 25,2015, as well as having open positions on trades in the account; Chase Bank had approximately $26,000, on or about April 30, 2015; and Interactive Brokers had approximately $10,000 on or about April 30, 2015. According to WURL, Ludiera closed out all open positions on May 26, 2015.

19.     WURL stated that he was the one who created and sent Ludiera account statements to investors, and he sent those account statements via email from his office in Chicago, Illinois. WURL stated that he sent account statements to investors in other states, via email, including to an investor in Texas. According to WURL those account statements contained false information in that they over-valued the investors' accounts and they falsely described the transactions that had taken place using investors' funds.

20.     On May 26, 2015, WURL gave me a copy of an email, dated May 7, 2015, which, according to WURL, he had sent to an investor, with the investor's Ludiera account statement. The email was addressed to Br.Ham. According to bank records, Br.Ham., whose home address was in New Jersey, had invested a total of approximately $400,000 during 2014 and 2015. The heading on the email states: "Ludiera Capital, LLC, Diversified Opportunity Portfolio 1, L.P., Transaction History - Physical Commodity Trading Fund."

21.     The email to Br.Ham. appears to contain false information concerning Ludiera's financial situation in 2014 and 2015. Specifically the email stated: "Recently, we [Ludiera] received our audited results for 2014 and we wish to make a

quick reference to our results in CY2014 - through our business activities, we recognized a net return to investors of more than 42% after taxes and fees. Of course, there's no reason to reminisce on past results - Already this year, we are off to a great start with net return to investors of more than 15%." Bank records and trading records show that Ludiera had not earned any profits during 2014 and 2015, but rather, Ludiera had lost approximately $3 million during that time period.

22.     The account statement sent to Br.Ham., which was for the time period March 20, 2015 through May 3, 2015, also appears to contain false information. The account statement showed that Br.Ham.'s investment of $400,000 had increased to approximately $457,000 (which appears to be a profit of approximately $57,000), and that Ludiera had used Br.Ham's investor funds for certain types of transactions, including transactions that appear to involve the physical movement of commodities. Based on bank records and trading records, it appears that Ludiera had not generated any profits, and that investor funds were not used to purchase or deliver physical commodities as indicated in the account statements. According to WURL, Ludiera had not engaged in the types of transactions identified in the account statements.

23.     WURL also provided to me approximately 37 other investor account statements, which WURL said he had sent to investors via email. Those account statements, which are similar to Br.Ham's account statement, described above, also appear to show that investors' funds had increased, and that their funds had been

6

used for certain types of transactions, which appear to involve the physical movement of commodities. As stated above, bank records and trading records appear to show that Ludiera had not generated any profits, and investor funds were not used for the types of transactions identified in the account statements. As stated above, according to WURL, Ludiera had not engaged in those types of transactions, and the account statements that he provided to investors over-valued their accounts and falsely represented the types of transactions engaged in by Ludiera.

24. Based on the above information, there is probable cause to believe that WURL devised, intended to devise, and participated in a scheme to defraud investors, and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises, with the intent to commit a violation of a federal law, namely wire fraud, in violation of Title 18, United States Code, Section 1343.

FURTHER AFFIANT SAYETH NOT.

MARK D. STAKEM
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me on May 27, 2015.

GERALDINE SOAT BROWN
United States Magistrate Judge

7